UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22-cr-00698-MTS |
| | ) | |
| GARY POINDEXTER, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant Gary Poindexter, represented by defense counsel Charles Kirksey, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to the lesser included charge in Count One of the indictment (conspiracy to distribute and possess with the intent to distribute a mixture or substance containing a detectable amount of fentanyl) and Count Six of the charge, the Government agrees to move for the dismissal as to the defendant of Counts Two and Four at the time of sentencing. Moreover, the

1

Government agrees that no further federal prosecution will be brought in this District relative to the defendant conspiring to distribute fentanyl, beginning at a time unknown and continuing thereafter to the date of the Indictment; the defendant distributing fentanyl on June 30, 2021 and August 24, 2021; and defendant possessing with the intent to distribute 400 grams or more of fentanyl on November 22, 2021, all occurring within the Eastern District of Missouri, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Counts One and Six, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to: (1) M&P, 9 millimeter Shield Plus pistol, and (3) three cellular telephones seized from Defendant's possession on November 22, 2021.

## 3. ELEMENTS:

### Count I:

As to Count One, the defendant admits to knowingly violating Title 21, United States Code, Sections 841(a)(1) and Title 21, United States Code, Section 846, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

2

*One*, on or before November 2021, two persons reached an agreement or came to an understanding to knowingly and intentionally distribute a possess with intent to distribute fentanyl;

*Two*, the defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and

*Three*, at the time the defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding.

**Count VI:**

As to Count Six, the defendant admits to knowingly violating Title 21, United States Code, Section 841(a)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, on or about November 22, 2021, within the Eastern District of Missouri, the defendant knowingly possessed 400 grams or more of a mixture or substance containing a detectable amount of fentanyl;

*Two*, the defendant intended to distribute such fentanyl to another person; and

*Three*, at the time of defendant's possession, the defendant knew he was in possession of a controlled substance.

**4. FACTS:**

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Beginning at an unknown date, but including June 30, 2021, and continuing through the date of the Indictment, defendant Gary Poindexter reached an agreement with co-defendant Shawn Cannon, to distribute and possess, with intent to distribute, fentanyl within the Eastern District of

3

Missouri. At the time Poindexter entered into the agreement, he understood the purpose of the agreement and entered into it voluntarily.

On or about June 30, 2021, investigators with the Drug Enforcement Administration (DEA) utilized a confidential source to conduct a drug transaction with co-defendant Shawn Cannon. On such date, the confidential source (CS) contacted Cannon's cellular telephone. Cannon directed CS to meet with Cannon in Ferguson, Missouri. Investigators proceeded to surveil CS as they traveled to the meeting location. After arriving at the meeting location, Cannon entered CS's vehicle. Cannon did not possess narcotics to distribute to CS at that time. Cannon eventually directed CS to drive at or near Hatina Drive and Sagewood Lane in Berkely, Missouri. After CS arrived at the next location, they observed Cannon exit the vehicle and walk to a white Range Roger driven by Poindexter. Poindexter proceeded to distribute suspected narcotics to Cannon. Cannon subsequently returned to CS's vehicle and distributed the suspected narcotics. Those narcotics were seized by investigators with the DEA and submitted to a laboratory. The suspected narcotics were tested and confirmed to be at least 1.472 grams of a mixture or substance containing fentanyl.

On or about August 24, 2021, investigators with the DEA utilized CS to conduct a drug transaction with Poindexter. On such date, CS contacted Poindexter's cellular telephone. Poindexter agreed to meet with CS. CS proceeded to travel to 219 Newell Drive, Ferguson, Missouri in order to meet Poindexter. Investigators maintained surveillance of CS as they entered the residence. CS proceeded to meet Poindexter inside the kitchen area of the residence. CS observed Cannon, and other unidentified individuals in the presence of Poindexter during the drug transaction. Poindexter proceeded to distribute suspected narcotics to CS in exchange for United States currency. Investigators with the DEA subsequently met with CS and seized the suspected

4

narcotics. The suspected narcotics were submitted to a laboratory, tested, and confirmed to be at least 5.7 grams of a mixture or substance containing fentanyl.

On November 22, 2021, law enforcement officers executed a federal search warrant at Poindexter's residence located at 6633 Cottingham Drive, Florissant, Missouri. Upon entering the residence, investigators encountered an individual identified as E.B. in the living room. Poindexter was observed exiting a bathroom inside the residence and was immediately apprehended. Investigators also observed co-defendant Alesha Conway and an individual identified as T.W. appear in the hallway of the residence. After securing the residence, investigators proceeded to conduct the search.

Inside the master bedroom, investigators located two plastic bags containing at least 576.5 grams of a mixture or substance containing a detectable amount of fentanyl. Poindexter's three cellular phones, an undetermined amount of United States currency, and a wallet containing his identification card were found near the fentanyl. In the guest bedroom, investigators located various boxes containing suspected drug paraphernalia. Such boxes contained numerous plastic bags, rubber bands, grinders, pill presses, and empty capsules. Additional narcotics and a M&P, 9 millimeter Shield Plus pistol were also located within Poindexter's residence. Investigators determined that Poindexter was not in possession of the additional narcotics or firearm.

On November 22, 2021, law enforcement officers also executed a federal search warrant at 219 Newell Drive, Ferguson, Missouri. Investigators previously discovered that Poindexter utilized the Newell address as a drug stash house and distribution center during the conspiracy. Inside the Newell residence, investigators located numerous items of drug paraphernalia that included: insulin syringes, straws, and glass pipes. Investigators also located hundreds of

individually packaged bags containing drug paraphernalia. Many of the individually packaged bags contained: insulin syringes, copper scrubbers, a glass pipe, a dormin capsule, and a lighter.

Poindexter waived his *Miranda* warning and agreed to speak with investigators with the DEA. Poindexter admitted using 219 Newell Drive as a residence to assist in his drug trafficking operation. Poindexter admitted to previously selling ounce level quantities of fentanyl.

If this case were to proceed to trial, an expert witness would testify that the amount of fentanyl seized from Poindexter, along with the drug paraphernalia, is inconsistent with possession for personal consumption. An expert witness would testify that Poindexter possessed the fentanyl for distribution purposes. Based on the totality of the evidence, including relevant conduct, the parties agree that Poindexter possessed and is accountable for at least 400 grams, but less than 1.2 kilograms of a mixture or substance containing a detectable amount of fentanyl.

### 5. **STATUTORY PENALTIES:**

**Count I:**

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $1,000,000.00 or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than 3 years. In the event defendant is subject to any undischarged or anticipated term of imprisonment imposed by any court, defendant has been apprised by counsel that the sentence imposed in this case may be imposed consecutively to the undischarged or anticipated term of imprisonment.

**Count VI:**

6

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than life, a fine of not more than $10,000,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not less than 5 years. **The defendant also fully understands that the crime to which a guilty plea is being entered requires a mandatory minimum term of imprisonment of at least 10 years.** In the event defendant is subject to any undischarged or anticipated term of imprisonment imposed by any court, defendant has been apprised by counsel that the sentence imposed in this case may be imposed consecutively to the undischarged or anticipated term of imprisonment.

**6. U.S. SENTENCING GUIDELINES (2021 MANUAL):**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

**a.  Chapter 2 Offense Conduct:**

**(1)  Base Offense Level:** The parties agree that the base offense level is 30, as found in Section 2D1.1.

**(2)  Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: None.

**b.  Chapter 3 Adjustments:**

**(1)  Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to

7

plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

      **(2)**   **Other Adjustments:**   The parties agree that the following additional adjustments apply: None.

      **d. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 27. Depending on the underlying offense and the defendant's criminal history, the defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds the defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. The defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that the defendant is or is not a Career Offender.

      **e. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

      **f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea

agreement. The Government recognizes it is bound by the specific agreements made herein but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

## 7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

9

    **c.** **Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

    **a.** **Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

    **b.** **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

    **c.** **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

    **d.** **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total

of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e.** **Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f.** **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

**g.** **Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the forfeiture of the following: (1) M&P, 9 millimeter Shield Plus pistol, and (3) three cellular telephones seized from Gary Poindexter's possession on November 22, 2021.

The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance

12

of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or

coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

14

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

7/18/23
Date

RICARDO DIXON
Assistant United States Attorney

7/18/23
Date

GARY POINDEXTER
Defendant

7/18/23
Date

CHARLES KIRKSEY
Attorney for Defendant

15